## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| IN RE:<br><br>**CHRISTINA GREENFIELD,**<br><br>Debtor. | **Case No. 19-20785-NGH**<br><br><br>**Chapter 7** |

### MEMORANDUM OF DECISION

**INTRODUCTION**

Christina Greenfield ("Debtor") challenges the impartiality of the undersigned bankruptcy judge and asserts bias based on an adverse ruling, the Court's handling of its calendar in scheduling certain hearings, and a purported "union" that is "susceptible to questionable behavior" with the chapter 7 trustee, David Gardner ("Trustee").[1] Debtor further seeks reconsideration of the Court's order approving Trustee's employment of a realtor. Finally, Debtor seeks to "stay" Trustee from listing her home for sale until after adjudication of her pending § 522(f) motion and resolution of an adversary proceeding. A hearing was held, and the matters were taken under advisement. The following constitutes the Court's findings of fact and conclusions of law.

**FACTUAL AND PROCEDURAL HISTORY**

Debtor filed her chapter 7 petition on December 11, 2019. Debtor was initially represented by counsel, however, on January 30, 2020, Debtor filed a notice of self-

---

[1] Unless otherwise indicated, all statutory citations are to the Bankruptcy Code, Title 11 U.S.C. §§ 101–1532, and "Rule" citations are to the Federal Rules of Bankruptcy Procedure.

MEMORANDUM OF DECISION - 1

representation. Doc. No. 20. Prior to hearing on Debtor's notice and issues arising

therefrom, Debtor's counsel agreed to disgorge fees paid by Debtor, and he was granted

leave to withdraw at a February 10, 2020 hearing. Doc. Nos. 24, 25, and 31. Debtor has

since proceeded *pro se*. Doc. No. 37.

Debtor's schedules listed a $103,000 unsecured debt owed to Eric and Rosalynd

Wurmlinger ("Creditors"). Doc. No. 1 at 20. Creditors filed a proof of claim asserting a

$261,083.21 debt, $170,000 of which was secured by a judgment lien encumbering

Debtor's home located at 210 S. Parkwood Pl., in Post Falls, Idaho (the "Property").

Claim 4-1. On February 5, 2020, Creditors filed an adversary proceeding seeking a

determination that the judgment debt owed to them by Debtor is non-dischargeable under

§ 523(a)(6). Adv. Doc. No. 1.[2]

On June 16, 2020, Debtor filed a "Motion to Avoid Lien Under 11 U.S.C.

§ 522(f)" seeking to avoid Creditor's judgment lien, and she set the matter for a hearing

commencing on July 13, 2020. Doc. Nos. 46, 47. Creditors timely objected. Doc. No.

50. On July 1, 2020, Trustee filed an application for approval of employment of a realtor

to sell the Property and provided notice and opportunity to object under LBR 2002.2(d).

Doc. No. 51 (the "Application").

Debtor sought to continue the July 13, 2020 hearing based on assertions that the

Coronavirus ("COVID-19") pandemic prevented her from marshalling necessary

---

[2] On October 16, 2020, Creditors moved to voluntarily dismiss that adversary proceeding,
W*urmlinger v. Greenfield*, No. 20-07005-NGH, at Adv. Doc. No. 55, and that motion has been set for
hearing on November 2, 2020. As a result of the motion to dismiss, the Court vacated the trial scheduled
to commence on November 2, 2020.

MEMORANDUM OF DECISION - 2

evidence to support her lien avoidance motion.  Doc. No. 56.  On July 10, 2020, the

Court vacated the July 13, 2020 hearing and required Debtor, Creditors, and Trustee to

each submit on or before August 28, 2020, a status report regarding the need for and their

readiness regarding an evidentiary hearing as to the pending motions.  Doc. No. 57.

On July 21, 2020, Debtor timely objected to Trustee's Application, raising

concerns over potential COVID-19 exposure.  Doc. No. 59.  Despite the notice in

Trustee's Application requiring an objecting party to set the matter for hearing, Debtor

did not contact the Court for a calendar date, and Trustee's Application and Debtor's

objection thereto were not initially set for hearing.

Debtor filed her status report on August 27, 2020.  Doc. No. 63.  Notably, while

Debtor indicated she was ready to set a hearing on the § 522(f) motion, she also stated

she would "be submitting an amended motion."  *Id.* at ¶ 4.  Debtor's status report did not

address her July 21, 2020 objection to Trustee's Application.  Trustee filed his status

report on August 28, 2020.  Doc. No. 64.  Trustee indicated he did not see any

evidentiary issues regarding his Application, but he would participate in an evidentiary

hearing if necessary.  *Id.*  Creditors filed their status report on August 29, 2020.  Doc. No.

65.  Creditors indicated they had no objection, legal or evidentiary, to the Application.

*Id.*  Creditors stated there were discovery issues regarding Debtor's § 522(f) motion, but

they had not been able to meet and confer with Debtor to address the issues.  *Id.*

Creditors also asserted that a hearing on the § 522(f) motion would be premature given

those issues.  *Id.*

MEMORANDUM OF DECISION - 3

On August 31, 2020, this case and the related adversary proceeding were assigned to the undersigned bankruptcy judge.  Doc. No. 66; Adv. Doc. No. 51.  Debtor requested a hearing date for her § 522(f) motion, and the Court informed her that its next available evidentiary hearing date was November 2, 2020.  However, Debtor did not file a notice of hearing.  Given review of the status reports and the docket, the Court set Trustee's Application for a non-evidentiary hearing on September 21, 2020.  Doc. No. 68.

On September 21, 2020, the Court held a telephonic hearing on Trustee's Application.  Debtor, Trustee, and Creditors participated and made oral statements.  The Court overruled Debtor's objection and approved Trustee's Application, and it entered an order accordingly.  Doc. No. 74.

On September 25, 2020, Debtor filed an amended motion to avoid Creditor's lien under § 522(f).  Doc. No. 76 (the "Amended § 522(f) Motion").[3]  That same day, she attempted to set an emergency hearing for October 6, 2020, to hear various unfiled motions, including a motion to hear the Amended § 522(f) Motion on October 19, 2020, rather than the November 2 date provided by the Court.  Doc. No. 78.  On September 30, 2020, Debtor filed a notice vacating the October 6 hearing.  Doc. No. 84.  She also filed a new notice of hearing for October 19, 2020, on motions that had still not been filed and requested the Court vacate the November 2, 2020 hearing date.  Doc. No. 85.  At that time, Debtor had not filed and served a notice of hearing setting her original § 522(f) motion nor her Amended § 522(f) Motion for hearing on November 2, 2020.  The Court

---

[3] Creditors responded to the Amended § 522(f) Motion.  Doc. No. 96.

MEMORANDUM OF DECISION - 4

entered an order vacating the emergency hearing set for October 6, 2020, conditioning the occurrence of an October 19 hearing on the filing of the motions referenced in the notice by October 5, 2020, and ordering any responses to those motions to be filed by October 13, 2020.  Doc. No. 86.

On October 1, 2020, Debtor filed her three-part motion, seeking recusal of the undersigned judge under 28 U.S.C. § 455, reconsideration of the Court's order approving Trustee's employment of a realtor, and a "stay of execution" against the listing of her residence for sale.  Doc. No 88.[4]  Trustee and Creditors did not file any responses to Debtor's motion although both appeared at the October 19, 2020 hearing.

## DISCUSSION AND DISPOSITION

### A.    Disqualification

The Court will first address Debtor's motion seeking the recusal of the undersigned judge.  Recusal in bankruptcy cases and proceedings is governed by 28 U.S.C. § 455.  *See also Seidel v. Durkin (In re Goodwin)*, 194 B.R. 214, 221 (9th Cir. BAP 1996); Rule 5004(a).  That section states in relevant part:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

> (b) He shall also disqualify himself in the following circumstances:

>> (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding[.]

---

[4] The Court entered orders clarifying that the October 19, 2020 hearing would be limited to Debtor's three-part motion and setting a separate evidentiary hearing on Debtor's Amended § 522(f) Motion for November 2, 2020.  Doc. Nos. 93, 94.

In evaluating a motion under 28 U.S.C. § 455, "the judge to whom a recusal motion is addressed is presumed to be impartial . . . and there is substantial burden on the moving party to show that the judge is not impartial." *In re Jones*, 2002 WL 818275, *5 (Bankr. D. Idaho Apr. 2, 2002) (quoting *In re Melendez*, 224 B.R. 252, 277 (Bankr. D. Mass. 1998)) (internal quotation marks omitted).  Moreover, "a federal judge has a duty to sit where not disqualified which is equally as strong as the duty to not sit where disqualified." *Laird v. Tatum*, 409 U.S. 824, 837 (1972).

Determining whether recusal is necessary in this case requires the Court to engage in a two-step process.  First, analyzing whether the impartiality of the undersigned judge might reasonably be questioned under 28 U.S.C. § 455(a).  Second, analyzing whether the undersigned judge has an actual personal bias under 28 U.S.C. § 455(b)(1).

### 1.    Impartiality

Under 28 U.S.C. § 455(a), the Court must determine "whether a reasonable person perceives a significant risk that the judge will resolve the case on a basis other than the merits." *United States v. Holland*, 519 F.3d 909, 913 (9th. Cir. 2008) (quoting *In re Mason*, 916 F.2d 384, 385 (7th Cir. 1990)) (internal quotation marks omitted).  The standard under this subsection is whether a reasonable and objective person, knowing all the facts, would harbor doubts concerning the judge's impartiality.  *United States v. Winston*, 613 F.2d 221, 222 (9th Cir. 1980); *see also Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 859–61 and 865 (1988) (discussing the objective standard and the appearance of partiality).  In conducting this review, a court must ask how the facts would appear to a "well-informed, thoughtful observer" and not a

"hypersensitive or unduly suspicious" person. *Holland*, 519 F.3d at 913. Moreover, the Ninth Circuit instructs that this standard "must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice." *Id.* (quoting *United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993)) (internal quotation marks omitted). In applying this objective standard to Debtor's arguments, the Court concludes recusal under 28 U.S.C. § 455(a) is not required.

Debtor argues the undersigned judge is acting partially because (1) the undersigned judge authorized Trustee's employment of a realtor and disregarded Debtor's COVID-19 concerns; (2) the undersigned judge set and ruled on Trustee's Application before addressing Debtor's § 522(f) motion; and (3) the undersigned judge refused to schedule a hearing on Debtor's motion to avoid Creditors' lien on the Property prior to trial in the adversary proceeding where Creditors are seeking to except their claim from discharge. Doc. No. 88 at 4–5.

### a.     Debtor's COVID-19 Health Concerns

Debtor disagrees with the Court's decision to authorize Trustee to employ a realtor and argues the undersigned judge is not following COVID-19 safety measures mandated by Idaho's Governor. Doc. No. 89 at ¶ 3. Debtor states she is a "senior with major health issues and [is] susceptible to the Coronavirus." Doc. No. 89 at ¶ 4. Allowing potential purchasers inside her home would therefore put her at risk. Debtor further argues Idaho's federal courts are allowing staff to work from home "and are <u>not</u> allowing any individuals into the Courtroom. Why Judge Hillen thinks that my home should be

MEMORANDUM OF DECISION - 7

treated any differently is a mystery and poor judgment in my opinion." Doc. No. 89 at ¶ 6.

The Court's decision to approve Trustee's employment of a realtor is not inconsistent with its own COVID-19 guidelines. On May 11, 2020, the Chief Judges of the United States District and Bankruptcy Courts for the District of Idaho entered General Order No. 367 regarding "Continued Court Operations in Response to Coronavirus (COVID-19) and Idaho Governor's Guidelines for Reopening Idaho" (the "General Order"). The General Order declared that once Idaho moved into Stage 3 of the Governor's reopening plan, the federal courthouses would open to the public and trials would resume. Gatherings would be limited to no more than 50 people under Stage 3. In Idaho's Stage 4, gatherings of any size were authorized to occur, and worksites were unrestricted as to the return of employees. In all stages, people in public areas in the federal courthouses and the courtrooms would be required to wear face coverings/masks for the protection of others and themselves. In the courtroom, the presiding judge would decide whether witnesses testifying on the witness stand would wear a face covering/mask. Additionally, physical distancing of at least six feet is required to be observed.

The Coeur d'Alene courthouse, and Kootenai County, is currently in Stage 4 of the Governor's reopening plan. Debtor's argument that individuals are not permitted in the courthouse is not correct; the courthouses are open and following appropriate safety

guidelines.[5]  The Court is mindful of Debtor's concern in contracting COVID-19 from

prospective purchasers entering her home.  However, the sale of the Property and the

process of listing and allowing interested buyers to view the Property were not before the

Court upon Trustee's Application.  As the Court made clear at the September 21 hearing,

if Trustee elects to pursue a sale of the Property, Trustee, Realtor, and Debtor will need to

work together to develop procedures that allow prospective purchasers to view the

Property while adhering to proper safety protocols.[6]  Thus the Court concludes that its

approval of Trustee's employment of a realtor, even during the course of a pandemic,

would not cause a reasonable person to believe the undersigned judge will resolve issues

on a basis other than the merits.

### b.    Interactions with Trustee

Debtor also alleges the undersigned judge should be disqualified because he and

Trustee (1) served as bankruptcy moot court coaches for the University of Idaho College

of Law; (2) served as chapter 7 panel trustees in the District of Idaho; and (3) published

articles in Eastern Washington Bankruptcy Notes in December 2011.[7]  Doc. No. 88 at p.

4.  Debtor alleges these connections "makes their union more susceptible to questionable

---

[5] In-person trials and contested hearings on evidentiary matters are being held even in Stage 3.

[6] The Parties have some flexibility on fashioning adequate protocols, which may include physical distancing, mandated masks or face coverings, mandated gloves, adequate cleaning procedures, and restricting in-home viewings to certain times when Debtor is not present.  Notably, Debtor has been working with various contractors to obtain repair bids regarding the Property during the pandemic, which has required her to accommodate individuals entering the Property.  *See* Doc. No. 56 at p. 2.

[7] Debtor also alleges Trustee is employed with the same law firm that represents other members of her family in court proceedings and those family members utilized the litigation with Creditors to support their claims.  The Court has no knowledge regarding this allegation, and any possible conflict arising with Trustee would not extend to the undersigned judge and would not require the recusal of the same.

behavior. One can only assume that the two of them shared personal conversations relating to debtors involved in bankruptcy proceedings." *Id.*

It is true that Trustee coached, along with another Northern Idaho bankruptcy attorney, the University of Idaho College of Law bankruptcy moot court team from the Moscow, Idaho campus. The undersigned judge also coached, along with a Boise, Idaho bankruptcy attorney, the University of Idaho College of Law bankruptcy moot court team from the Boise, Idaho campus. While these teams were geographically separate, the undersigned judge did have contact with Trustee regarding the moot court competition and organizing practice arguments between the teams via video conference. At no time did the undersigned judge discuss this case, or the related adversary proceeding, with Trustee. The undersigned judge was not aware of this case or the adversary proceeding until they were assigned.

It is also true that Trustee and the undersigned judge both served as chapter 7 panel trustees in the District of Idaho from 2014 to August 29, 2020, when the undersigned judge resigned from the panel. Trustee administers cases from the Northern Division of the District. The undersigned judge was a panel trustee administering cases arising in the Southern Division of the District. While a chapter 7 trustee, the undersigned judge would occasionally discuss legal issues arising in cases with other trustees in the District, including Trustee. The undersigned judge estimates that approximately two or three times a year, he and Trustee would discuss a difficult issue in one of their cases. However, the undersigned judge never discussed this case, or the related adversary proceeding, with Trustee.

MEMORANDUM OF DECISION - 10

Regarding the alleged connection involving the articles published in Eastern Washington Bankruptcy Notes, the undersigned judge had no contact with Trustee regarding that matter. The undersigned judge did not work with Trustee on any articles or coordinate submission of those articles to that publication. In addition, the substance of those individual articles (both the undersigned's and Trustee's) are unrelated to this case.

"It is a fact of legal life that former law clerks, and former law firm partners, and lawyers with whom a judge has cordial and even friendly relationships, may appear in front of that judge. Their success must be based on the evidence and the law, not on relationships." *Wisdom v. Gugino (In re Wisdom)*, 2014 WL 2175148 at *4 (Bankr. D. Idaho May 23, 2014). A reasonably objective person, fully informed of the facts set forth above, would conclude the undersigned judge is impartial and Trustee's success before this Court, or lack thereof, will be based on the evidence and law only. Debtor fails to allege any facts from which a well-informed and objective person would harbor doubts concerning the undersigned judge's impartiality toward Trustee. This objective standard cannot be satisfied by speculation about the undersigned judge's state of mind or speculation about conversations Trustee and the undersigned judge may have had. Without more objective manifestations of alleged partiality—and adverse rulings alone cannot be so characterized—no reasonable person would conclude that the undersigned judge should disqualify himself from this case or the related adversary proceeding.

### c.    Scheduling of Hearings

Debtor also points to the Court's scheduling of a hearing on her § 522(f) motion in relation to the hearing on Trustee's Application and trial in the related adversary proceeding as further proof of partiality.  She alleges the undersigned judge is acting partial and violating her due process rights because her § 522(f) motion was not scheduled to occur before hearing on Trustee's Application and the trial in the adversary proceeding.  *See* Doc. No. 88 at 2; Doc. No. 89 at 2.[8]  Debtor argues Trustee, who has now been authorized to employ a realtor, will sell the Property before trial in the adversary proceeding or hearing on her § 522(f) motion, which will only serve to reward Trustee and Creditors.  Debtor further argues that if she obtains the full relief she is entitled to under her Amended § 522(f) Motion, she "could possibly quash" the adversary proceeding.  Doc. No. 88 at 3.

The Court concludes that a well-informed and objective person would not harbor doubts concerning the undersigned judge's impartiality based on how this Court managed its calendar and scheduled the various matters for hearing and trial.  Nor has this Court violated Debtor's due process rights.

The timeline outlined above gives important context to the scheduling of hearings on the relevant matters.  Initially, it is important to note that the Court has broad discretion in controlling its calendar.  While Debtor complains she has been unable to

---

[8] At hearing, Debtor asserted a belief or suspicion that some form of post-petition *ex parte* communication occurred between the undersigned and Trustee leading to the scheduled hearing of Trustee's Application prior to hearing Debtor's motion to avoid Creditors' judgment lien on the Property. No such communication occurred.

obtain a hearing on her § 522(f) motion prior to Trustee obtaining a hearing on his Application, there are logical reasons for this.  First, no party indicated an evidentiary hearing was needed on Trustee's Application.  Therefore, the Court could hear legal argument on Trustee's Application at a telephonic hearing.[9]  The parties, however, contemplated evidence and testimony would be required to address Debtor's motion to avoid Creditors' judgment lien under § 522(f).  In other words, the hearing would need to take place in-person at the Coeur d'Alene courthouse.  The Court is scheduled to next travel to Coeur d'Alene on November 2, 2020.  Second, Debtor's status report represented that she planned on filing an amended § 522(f) motion.  Setting a hearing on Debtor's § 522(f) motion would be premature until she filed the same and parties in interest were given a reasonable opportunity to respond.  Given these facts, the Court gave Debtor a November 2, 2020 hearing date for the Amended § 522(f) Motion, commencing at 10:00 A.M. PST.  This would permit Debtor to prosecute the Amended § 522(f) Motion prior to the commencement of trial in the adversary proceeding, which was scheduled to start at 1:30 P.M. PST on November 2, 2020.[10]

As to Debtor's due process concerns over the sale of the Property prior to hearing her Amended § 522(f) Motion or trial in the adversary proceeding, it is important to note that Trustee has not sought court approval for such a sale.  Any sale would require Court

---

[9] Consistent with General Order 367, the Court has been holding telephonic hearings on all non-evidentiary matters due to COVID-19.

[10] At the October 19, 2020 hearing, Debtor expressed concerns over the Court setting other matters for November 3 when the trial was scheduled to occur.  Given the Court's limited dates in Coeur d'Alene, the Court routinely sets multiple matters to be heard.  Such settings do not indicate any partiality or pre-judgment on the part of the Court as to the merits of the matters set.

MEMORANDUM OF DECISION - 13

approval pursuant to 11 U.S.C. § 363(b) and notice to all creditors and Debtor. *See* Rule 2002. Debtor would then have an opportunity to object. At this time, Trustee has only been authorized to employ a realtor. Debtor alleges in her Amended § 522(f) Motion that the Property requires substantial repairs, which negatively impacts the Property's fair market value. Given these allegations, it is not clear Trustee will be able to sell the Property at a price sufficient to obtain Court approval of the sale. A realtor may need to provide Trustee with guidance as to how any needed repairs impact the potential sale of the Property. Trustee should be, and is, able to hire an experienced realtor to obtain such guidance regarding this issue.

Finally, Debtor's argument that a ruling in her favor on the Amended § 522(f) Motion could "quash" the adversary proceeding is incorrect. The legal issues presented in the Amended § 522(f) Motion and in the adversary proceeding are independent and distinct. Debtor's Amended § 522(f) Motion seeks to avoid Creditor's judgment lien from the Property. If successful, Creditors would hold a fully unsecured claim against Debtor. At issue in the adversary proceeding is whether Creditors' claim against Debtor is subject to discharge in this bankruptcy case. If Debtor prevails on her Amended § 522(f) Motion and Creditors hold a fully unsecured claim, Creditors would still be permitted to prosecute the adversary proceeding and attempt to prove their claim is excepted from discharge. Thus, the Amended § 522(f) Motion is not a pre-requisite to trial in the adversary proceeding.[11]

---

[11] Given Creditors' pending motion to dismiss the adversary proceeding and the Court's decision to vacate the adversary trial, Debtor's concerns over the sequence in which the matters are to be heard has likely been eliminated.

MEMORANDUM OF DECISION - 14

### 2.   Bias

The distinction between 28 U.S.C. § 455(a) and 28 U.S.C. § 455(b)(1) is modest.

However, the test under 28 U.S.C. § 455(b)(1) "is not one of the objective viewer's

perspective, or of the movant's suspicions; rather it is one of the judge's knowledge of

actual bias." *In re Wisdom*, 2014 WL 2175148 at *4 (citing *In re Syntax-Brillian Corp.*,

400 B.R. 21, 26 (Bankr. D. Del. 2009)) (noting that 28 U.S.C. § 455(b) requires the judge

"to disqualify himself or herself on account of an actual (as opposed to perceived) bias or

conflict"). Notably, "judicial rulings alone almost never constitute a valid basis" for

finding bias or partiality. *Liteky v. United States*, 510 U.S. 540, 555 (1994). As stated in

*Goodwin*, "even if [the judge] erred, that does not constitute bias. A judge may be wrong

without being prejudiced." 194 B.R. at 224.

The Court concludes that the undersigned judge does not have a deep-seated

favoritism that would make fair judgment in this case impossible. Despite being a

professional colleague with Trustee, the undersigned judge has no hesitation in

determining he is impartial when Trustee appears before the Court. Trustee's success

before this Court is based on the evidence and the law. Trustee is held to the same

standard as other litigants that appear before the undersigned judge.

Nor does the Court lack the required impartiality or have any bias regarding

Debtor. The undersigned judge has only recently been assigned this case. The

undersigned has no prior knowledge of Debtor and has never interacted with her outside

of hearings in this case. The fact that Debtor has pursued this motion creates no deep-

MEMORANDUM OF DECISION - 15

seated antagonism that would make fair judgment impossible nor any bias.  Debtor was

entitled to raise the issue, and the Court was required to address it.

In sum, under 28 U.S.C. § 455 and the relevant authorities, the undersigned judge

is not required to recuse himself in this case or the related adversary proceeding.

### B.     Motion to Reconsider

Debtor requests the court reconsider its approval of Trustee's Application.  Doc.

No. 88 at 1.  Motions to reconsider do not exist under the Federal Rules of Bankruptcy

Procedure.  *In re Ricks*, 2015 WL 6125559, *2 (Bankr. D. Idaho Oct. 16, 2015).  When

so asserted, they are treated as motions under Fed. R. Civ. P. 59(e) made applicable by

Rule 9023.  *Id.*  This Court previously explained that "a party may move the court to alter

or amend its judgment, so long as: (1) the court is presented with newly discovered

evidence, (2) the court committed clear error or the initial decision was manifestly unjust,

or (3) there is an intervening change in controlling law."  *Zazzali v. Goldsmith (In re*

*DBSI, Inc.)*, 2018 WL 6931280, *2–3 (Bankr. D. Idaho Nov. 21, 2018) (quoting *Owen v.*

*Lundstrom (In re Owen)*, 2006 WL 2548787, *2 (Bankr. D. Idaho Aug. 31, 2006)).

Moreover, such motions should not be used to reargue contentions already presented.

"Motions to reconsider are not vehicles by which to make the same arguments as earlier

made (even if hopefully more persuasively), or to raise arguments that should have been

made but were not."  *Id*. (quoting *In re Tonnemacher*, 2015 WL 8489036, *2 (Bankr. D.

Idaho Dec. 10, 2015)); *accord In re Sterling Mining Co.*, 2009 WL 2705825, *2 (Bankr.

D. Idaho Aug. 24, 2009).

Here, Debtor has not established that reconsideration is warranted. Of the three grounds for reconsideration identified in *Zazzali*, Debtor's arguments relate only to the second ground—that the court committed clear error or the initial decision was manifestly unjust. Debtor asserts the Court's approval of Trustee's employment of a realtor was irrational and violated her right to due process. Doc. No. 88 at 2. However, Debtor's objection to Trustee's Application, Doc. No. 51, was based exclusively on the assertion that she is vulnerable to contracting COVID-19 and suffering serious complications therefrom. At the hearing on Trustee's Application, the Court considered Debtor's concerns given the pandemic, and Trustee's explanation that the realtor would follow appropriate COVID-19 safety measures adopted by the local MLS for listing and showing properties in this difficult environment. The Court fully considered Debtor's position at the hearing and noted that the realtor, Trustee, and Debtor would need to coordinate and establish appropriate safety guidelines for listing and showing the Property, but ultimately Debtor's objection did not speak to the Trustee's employment of the professional.[12] A review of the docket demonstrates Trustee provided sufficient notice of his Application, and Debtor had an opportunity to object and be heard orally and through written submissions. As explained above, the employment of a realtor is a preliminary step, and Trustee will be required to obtain approval for sale of the Property.

---

[12] In short, Debtor's due process concerns do not appear to stem from Trustee's employment of a professional realtor, but from the logical next step of Trustee attempting to sell the Property with the assistance of that realtor. To the extent there were due process issues in Trustee's employment of such a professional, they were not fully developed and presented to the Court. To the extent there are due process concerns over the sale of the Property, they are rejected as premature.

MEMORANDUM OF DECISION - 17

Thus, Debtor's due process rights have not been violated, and the Court's approval of Trustee's Application was not manifestly unjust.

For these reasons, Debtor's motion for reconsideration of the Court's approval of Trustee's employment of a realtor will be denied.

### C.    Motion for Stay of Execution

Debtor requests a "Stay of Execution on listing her property until all other matters are resolved in this case." Doc. No. 88 at 5. Though stylized as a stay of execution, Debtor essentially requests the Court enjoin Trustee from taking steps to sell property of the estate. A request to enjoin a trustee from selling property of the estate requires an adversary proceeding. Rule 7001; *In re Innovative Commc'n Co., LLC*, 2008 WL 4755763, *4–5 (D.V.I. Oct. 27, 2008); *Gazes v. DeArakie (In re DeArakie)*, 199 B.R. 821, 824 (Bankr. S.D.N.Y. 1996). Seeking such relief through a motion is procedurally improper. Thus, Debtor's motion for a "Stay of Execution" will be denied.

## CONCLUSION

Based on the foregoing, Debtor's combined motion for recusal, reconsideration, and a stay of execution, Doc. No. 88, will be denied. The Court will enter an appropriate order.

DATED: October 22, 2020



_____
NOAH G. HILLEN
U.S. Bankruptcy Judge

MEMORANDUM OF DECISION - 18